FILED
United States Court of Appeals
Tenth Circuit

October 18, 2018

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

BALJIT S. NANDA,

   Plaintiff Counter Defendant - Appellant,

v.

PHILLIPS 66 COMPANY,

   Defendant Counter Claimant - Appellee.

No. 17-1318
(D.C. No. 1:15-CV-02108-REB-STV)
(D. Colo.)

_____

ORDER AND JUDGMENT[*]
_____

Before **McHUGH**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

Baljit Nanda appeals the district court's order denying his motion for new trial. He contends the district court abused its discretion in concluding that the jury's verdicts on two of Phillips 66 Company's counterclaims were not against the weight of the evidence. We conclude the district court did not abuse its discretion in denying Nanda's motion for new trial. Accordingly, we affirm.

---

[*] This order and judgment isn't binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

## Background

In February 2013, Nanda agreed to sell multiple gas stations and convenience stores (the Stores) to Phillips 66 Company (Phillips) via an Asset Purchase and Sale Agreement (the APA).

The APA contains several clauses that are relevant to this appeal. First, § 3.18 of the APA (the Books and Records Clause) states:

> ***Books and Records***. All of the books, records[,] and accounts of [Nanda] (a) are true and complete in all material respects, (b) are maintained in accordance with past business practice and all applicable Legal Requirements, (c) accurately present and reflect in all material respects all of the transactions therein described and (d) are reflected accurately in all material respects in the Financial Statements.

App. 108.

Second, § 5.22.2(a) of the APA (the Environmental Liabilities Clause), states in relevant part:

> [Nanda's] Retained Environmental Liabilities. As between [Nanda] and [Phillips], [Nanda] shall retain and be responsible for: (i) Remediation of Covered Contamination to Closure; and (ii) all Environmental Claims and Liabilities arising from or relating to the Real Property (whether Owned Real Property or Leased Real Property), including any proceedings initiated by a third party alleging damages for Covered Contamination, to the extent based on conditions occurring or existing prior to or as of the Closing Date . . . .

*Id.* at 120.

Third, § 5.22.3 of the APA (the Remediation Clause), states:

> <u>Reimbursement for Assumed Remediation</u>. The parties intend that any costs associated with the Assumed Remediation will be covered by the Environmental Agreements or reimbursed by a Government Remediation Fund as described in Section 10. For any costs associated with the Assumed Remediation that [are] not covered by the Environmental Agreements or reimbursed by a Government Remediation Fund, [Nanda] shall reimburse [Phillips] within [30] days after [Nanda's] receipt of an invoice documenting such costs and an explanation as to why such costs will not be covered by the Environmental Agreements or reimbursed by a Government Remediation Fund.

*Id.* at 122.

Fourth, § 3.13.2 of the APA (the Store Condition Clause) attests that as of the closing date, the Stores were "in good repair and in good condition, ordinary wear and tear excepted, and [were] free from latent and patent defects." *Id.* at 106.

Fifth, the APA contains two relevant notice provisions. Section 5.7 of the APA states:

> ***Notification of Certain Matters***. Each party will promptly notify the other party of any fact, event, circumstance or action (a) that, if known on the date of [the APA], would have been required to be disclosed to the other party pursuant to [the APA], (b) the existence or occurrence of which would cause any of such party's representations or warranties under [the APA] not to be correct and complete as of the Effective Time; or (c) that could reasonably be expected to have a Material Adverse Effect.

*Id.* at 112. Relatedly, § 11.3 of the APA explains:

> ***Notices***. All notices that are required or permitted to be given to the parties under [the APA] shall be sufficient in all respects if given in writing and delivered in person, by overnight courier, or by certified mail, postage prepaid, return receipt requested, to the receiving party at the [designated address].

3

*Id.* at 132.

In addition to these clauses, the APA also sets forth in Schedule 2.4 the purchase prices of the various assets that Nanda agreed to transfer to Phillips.[1] For instance, the APA reflects that Phillips agreed to pay Nanda $1,051,093 for an "[i]nventory [r]eceivable" and $50,000 for a "[r]ent [r]eceivable." Aplee. Supp. App. vol. 1, 72. Phillips asserts—and Nanda doesn't dispute—that the purchase prices of these receivables were based on Nanda's representations that he was owed such amounts by Gas-Mart, Inc. (Gas-Mart), a separate entity that operated some of the Stores before Phillips purchased them from Nanda.

Finally, the APA contains a clause that would have allowed Nanda to buy back some of the Stores from Phillips under certain circumstances. But when Nanda attempted to exercise this buy-back option, Phillips refused to sell. As a result, Nanda sued Phillips for breach of contact.[2] In response, Phillips asserted a breach-of-contract counterclaim against Nanda.

In support of its counterclaim, Phillips advanced three different breach-of-contract theories. First, it alleged that Nanda overstated the value of the receivables (the Receivables Counterclaim). Specifically, Phillips asserted that it was unable to collect from Gas-Mart (1) the full $1,051,093 that Phillips paid Nanda for the inventory receivable or (2) any of the $50,000 that Phillips paid Nanda for the rent

---

[1] The relevant version of Schedule 2.4 isn't part of the original APA. Instead, the parties incorporated the relevant version of Schedule 2.4 into the APA as part of a later amendment.

[2] A jury ultimately found for Phillips on Nanda's breach-of-contract claim. That portion of the jury's verdict is not at issue in this appeal.

receivable. Second, Phillips alleged that Nanda refused to reimburse it for remediation costs arising from preexisting environmental contamination at some of the Stores (the Remediation Counterclaim). Third, Phillips alleged that the Stores were not, as Nanda attested, "in good repair and in good condition" (the Store Repair Counterclaim). App. 106.

The case proceeded to a jury trial. There, Matthew Fischer, Phillips's managing director of business development, testified that the inventory receivable was ultimately worth $326,000 less than the $1,051,093 that Phillips paid Nanda for it. That is, although Nanda represented to Phillips that Gas-Mart owed him $1,051,093 for inventory, Phillips was only able to collect $725,093 of that $1,051,093 from Gas-Mart. Additionally, Fischer testified that Phillips wasn't "able to recover" any of the $50,000 rent receivable from Gas-Mart. Supp. App. vol. 4, 572. Instead, Fischer explained, "Gas[-]Mart claimed an offset for maintenance" that it "had done to" some of the Stores, for which Nanda failed to "reimburse[]" Gas-Mart. *Id.* Finally, Fischer testified that the "records and accounts" Nanda "provided to [Phillips] with respect to [the] inventory receivable[]" were inaccurate. *Id.*

The jury also heard the testimony of Dean Schnitzler, the manager of analysis and investment appraisal for Phillips's corporate-business-development department. Schnitzler stated that Phillips incurred $318,000 in expenses as a result of soil contamination at certain of the Stores. And he clarified that these costs arose from contamination that was present at the Stores "while [Nanda] owned them." Supp.

5

App. vol. 5, 729. Further, according to Schnitzler, Nanda refused to reimburse Phillips for these costs.

Based on this evidence, the jury found for Phillips on its general breach-of-contract counterclaim. It awarded Phillips no damages on the Store Repair Counterclaim. But it awarded Phillips $50,000 on the Receivables Counterclaim and $317,801 on the Remediation Counterclaim. Notably, the verdict form didn't require the jury to specify whether the jury based its $50,000 award on the rent receivable, the inventory receivable, or some combination of the two.

Nanda then filed a motion for new trial, in which he generally alleged that the jury's verdicts on the Receivables Counterclaim and the Remediation Counterclaim were against the weight of the evidence. The district court disagreed and denied his motion. Nanda appeals.

**Analysis**

On appeal, Nanda asserts that the district court made various errors in denying his motion for new trial. In evaluating Nanda's arguments, we review for abuse of discretion. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 762 (10th Cir. 2009). A district court abuses its discretion if it makes a ruling that is "arbitrary, capricious or whimsical, or manifestly unreasonable." *In re SandRidge Energy, Inc.*, 875 F.3d 1297, 1304 (10th Cir. 2017) (quoting *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015)).

The abuse-of-discretion standard is a deferential one. *See Goebel v. Denver & Rio Grande W.R.R. Co.*, 346 F.3d 987, 1000 (10th Cir. 2003). And it is doubly so

6

where, as here, a motion for new trial asserts that the jury's verdict was against the weight of the evidence. Under those circumstances, the jury's "verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." *M.D. Mark, Inc.*, 565 F.3d at 762 (quoting *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999)); *see also Champion Home Builders v. Shumate*, 388 F.2d 806, 808 (10th Cir. 1967) ("[T]he jury['s] verdict must not be preempted unless it has no basis in fact."). Thus, our task in reviewing the district court's order denying Nanda's Rule 59(a) motion is essentially to ask whether the district court reached a manifestly unreasonable conclusion in determining that the jury's verdict had at least some "basis in fact." *Champion Home Builders*, 388 F.2d at 808; *see also In re SandRidge Energy, Inc.*, 875 F.3d at 1304. Further, in answering that question, we must view the evidence before the jury in the light most favorable to Phillips as the nonmoving party.[3] *M.D. Mark, Inc.*, 565 F.3d at 763.

---

[3] Citing *Henning v. Union Pacific Railroad Co.*, 530 F.3d 1206, 1216 (10th Cir. 2008), Nanda insists that "a motion for a new trial neither requires nor even envisions that the court view the evidence in a light most favorable to the party opposing" the motion. Aplt. Br. 11. But in *Henning*, the appellant didn't assert that the jury's verdict was against the weight of the evidence. Instead, the appellant's motion for new trial alleged that "the district court committed prejudicial evidentiary errors as well as errors in the jury instructions." 530 F.3d at 1216. Thus, Nanda's reliance on *Henning* is misplaced. *Compare id.*, *with Snyder v. City of Moab*, 354 F.3d 1179, 1187–88 (10th Cir. 2003) (explaining that when motion for new trial alleges jury's verdict isn't supported by evidence, court "considers the evidence in the light most favorable to" party opposing motion; reiterating that jury has "exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact" (quoting *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1226 (10th Cir. 2000))).

**I.      The Receivables Counterclaim**

On appeal, Nanda first argues that the jury's verdict on the Receivables Counterclaim was against the weight of the evidence.

The parties agree the Receivables Counterclaim arises from the APA's Books and Records Clause. That clause states:

> ***Books and Records***. All of the books, records[,] and accounts of [Nanda] (a) are true and complete in all material respects, (b) are maintained in accordance with past business practice and all applicable Legal Requirements, (c) accurately present and reflect in all material respects all of the transactions therein described and (d) are reflected accurately in all material respects in the Financial Statements.

App. 108. But the parties disagree about the type of evidence Phillips was required to present to prove Nanda breached that clause. In particular, Nanda alleges that Phillips was required to offer into evidence his actual books and records. And because it failed to do so, he insists, Phillips presented insufficient evidence to support the jury's verdict on the Receivables Counterclaim.

But Nanda cites no legal authority that might support his assertion that Phillips was required to prove its claim via his actual books and records, as opposed to, e.g., testimony about those books and records. *Cf.* Fed. R. App. P. 28(a)(8)(A) (requiring argument section of appellant's brief to contain "appellant's contentions and the reasons for them, with citations to the authorities . . . on which the appellant relies"); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (explaining that we routinely decline to address arguments that fail to comply with these requirements). Moreover, as Phillips points out, "courts do not bar oral proof of a matter merely

8

because it is also provable by writing." *Allen v. W.H.O. Alfalfa Milling Co.*, 272 F.2d 98, 100 (10th Cir. 1959). Thus, in the absence of any authority to the contrary, we conclude Phillips could prove its Receivables Counterclaim via means other than Nanda's actual books and records.

And that's precisely what Phillips did. For instance, the jury had before it Schedule 2.4, which listed $1,051,093 as the price Phillips agreed to pay Nanda for the inventory receivable. Moreover, Nanda doesn't dispute that this purchase price was based on his representation regarding the value of the inventory receivable. Further, the jury also heard Fischer's testimony that the inventory receivable "ended up being [worth] $326,000 less" than the agreed-upon purchase price. Supp. App. vol. 4, 571. Finally, despite Nanda's assertions to the contrary, Fischer expressly stated that the "records and accounts [Nanda] provided to [Phillips] with respect to [the] inventory receivable[]" were not "accurate." *Id.* at 572.

Viewed in the light most favorable to Phillips, this evidence would allow a reasonable jury to conclude that Nanda's "books, records[,] and accounts" didn't "tru[ly] and complete[ly]" reflect the actual value of the inventory receivable.[4] App. 108. And for the reasons discussed below, this conclusion makes it unnecessary for us to address the merits of Nanda's remaining challenges to the portion of the district court's order denying him a new trial on the Receivables Counterclaim.

---

[4] In his reply brief, Nanda asserts for the first time that even assuming his books and records overstated the value of the receivables, he wasn't aware of any overstatement when he attested to the accuracy of his books and records. But "a party waives issues and arguments raised for the first time in a reply brief." *M.D. Mark, Inc.*, 565 F.3d at 768 n.7. So we decline to address this assertion.

For instance, Nanda points out that in finding sufficient support for the jury's verdict on the Receivables Counterclaim, the district court cited both (1) Nanda's own testimony about Gas-Mart's inventory and (2) testimony from Randal Fralix, Phillips's general manager of sales, regarding the actual value of the inventory receivable. Nanda then alleges that nothing in his own testimony supports the jury's verdict and that Fralix's testimony constituted inadmissible hearsay.

We need not address these arguments. Even assuming the district court somehow erred in relying on Nanda's or Fralix's testimony, those errors were harmless. For the reasons discussed above, Fischer's testimony was, standing alone, sufficient to support the jury's verdict on the Receivables Counterclaim under the doubly deferential standard of review we must apply here. *See In re SandRidge Energy, Inc.*, 875 F.3d at 1304 (explaining that district court abuses its discretion if its decision is "arbitrary, capricious or whimsical, or manifestly unreasonable" (quoting *Birch*, 812 F.3d at 1247)); *Champion Home Builders*, 388 F.2d at 808 (explaining that jury's verdict will stand so long as it has any "basis in fact").

For the same reason, we need not address Nanda's assertion that Phillips presented no evidence demonstrating that his books and records inaccurately overstated the value of *rent* receivable. Although the verdict form didn't specify whether the jury relied on the inventory receivable or the rent receivable as the basis for its decision to award Phillips $50,000 on the Receivables Counterclaim, the fact remains that the evidence Phillips presented at trial would allow a reasonable jury to conclude Nanda's books and records overstated the value of the *inventory*

10

receivable—and that they did so by more than $300,000.[5] Thus, even assuming Nanda is correct that he didn't overstate the value of the rent receivable, neither the jury's finding that Nanda breached the Books and Records Clause nor its decision to award Phillips $50,000 for that breach are "clearly, decidedly, or overwhelmingly against the weight of the evidence." *M.D. Mark, Inc.*, 565 F.3d at 762 (quoting *Anaeme*, 164 F.3d at 1284).

Nanda's final argument on this point invokes two of the APA's notice provisions. He points out that § 5.7 requires "[e]ach party" to "promptly notify the other party of any fact, event, circumstance or action . . . the existence or occurrence of which would cause any of such party's representations or warranties under [the APA] not to be correct and complete." App. 112. Nanda characterizes this notice requirement as a "condition precedent" and asserts that Phillips failed to satisfy this condition when it neglected to notify him that the receivables were worth less than he represented. Aplt. Br. 17. He further suggests that Phillips ran afoul of § 11.3 of the APA by failing to provide such notification "in writing and delivered in person, by overnight courier, or by certified mail, postage prepaid, return receipt requested, to" his address as listed in the APA. App. 132.

At the outset, we question whether § 5.7 required Phillips to inform Nanda that *Nanda's* representations weren't "correct and complete." *Id.* at 112. Instead, it appears that § 5.7 required Phillips to inform Nanda only if it discovered one of *its*

---

[5] Specifically, Fischer testified that Nanda overstated the value of the inventory receivable by $326,000.

11

*own* "representations or warranties" was no longer accurate. *Id.* In any event, we need not parse the meaning of this clause to reject Nanda's notice argument. That's because Nanda's opening brief fails to provide a citation or citations demonstrating that he raised this argument below and that the district court ruled on it. *See* 10th Cir. R. 28.2(C)(2) ("For each issue raised on appeal, all briefs must cite the precise reference in the record where the issue was raised and ruled on."); *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1540 n.3 (10th Cir. 1996) (noting litigants' obligation to identify in opening brief where each issue was raised and ruled on below; declining to "sift through" voluminous record after appellant failed to do so). In fact, even after Phillips brought this briefing deficiency to Nanda's attention in its response brief, Nanda neither provided the requisite citations nor argued for plain error in his reply brief. Accordingly, we treat Nanda's notice argument as waived and decline to consider it. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128, 1131 (10th Cir. 2011).

In short, the portion of the jury's verdict finding for Phillips on the Receivables Counterclaim wasn't "clearly, decidedly, or overwhelmingly against the weight of the evidence." *M.D. Mark, Inc.*, 565 F.3d at 762 (quoting *Anaeme*, 164 F.3d at 1284). Thus, the district court didn't abuse its discretion in refusing to grant Nanda a new trial on that claim.

## II.   The Remediation Counterclaim

Nanda next asserts that the district court abused its discretion in refusing to grant him a new trial on the Remediation Counterclaim. In support, Nanda first points

out that the Environmental Liabilities Clause and the Remediation Clause required him to reimburse Phillips only for those remediation costs arising from contamination that existed "prior to or as of the [APA's] Closing Date." App. 120. According to Nanda, Phillips failed to present any evidence that suggested the contamination at issue here existed as of that date.

This argument fails for two reasons. First, Nanda has waived it by neglecting to either (1) demonstrate he advanced this point below or (2) make a plain-error argument on appeal.[6] *See Richison*, 634 F.3d at 1131. Second, Schnitzler expressly testified at trial that Phillips incurred $318,000 in remediation costs arising from contamination that existed "while [Nanda] owned" the Stores. Supp. App. vol. 5, 729. Thus, the jury's finding that the contamination at issue existed "prior to or as of the [APA's] Closing Date," App. 120, wasn't "clearly, decidedly, or overwhelmingly against the weight of the evidence," *M.D. Mark, Inc.*, 565 F.3d at 762 (quoting *Anaeme*, 164 F.3d at 1284).

Next, Nanda points out that the Remediation Clause required him to "reimburse [Phillips] within [30] days after [Nanda's] receipt of an invoice documenting such costs and an explanation as to why such costs will not be covered by the Environmental Agreements or reimbursed by a Government Remediation

---

[6] In fact, Nanda took precisely the opposite position in his motion for new trial. There, he conceded Schnitzler testified that "the contamination existed as of the [c]losing [d]ate" and argued only that the testimony wasn't based on Schnitzler's own "personal knowledge." App. 20. Notably, just as Nanda failed to raise below the insufficient-evidence argument he now makes on appeal, Nanda failed to lodge below a contemporaneous personal-knowledge objection to Schnitzler's testimony. Likewise, Nanda doesn't pursue his personal-knowledge argument on appeal.

Fund." App. 122. And according to Nanda, Phillips failed to prove that it provided him with either an invoice or a written explanation as to why the remediation costs weren't otherwise covered or subject to government reimbursement. Thus, he concludes, the district court erred in denying his motion for new trial on the Remediation Counterclaim.

Unlike his previous argument, Nanda advanced these assertions in his motion for new trial. But it appears he raised them for the first time in that motion. Thus, the district court treated these arguments as untimely and declined to consider them. *See Csiszer v. Wren*, 614 F.3d 866, 871 (8th Cir. 2010) ("Raising an objection for the first time in a post-verdict motion for new trial is not sufficient to preserve it.").

On appeal, Nanda challenges the district court's finding that he failed to advance these particular arguments at any point before the jury returned its verdict. We have reviewed the record citations that Nanda provides to support this challenge and agree with Phillips that none of them demonstrate Nanda presented either of these arguments to the district court at any point before his motion for new trial. For instance, the first record citation that Nanda provides directs us to a discussion during his opening statement about Phillips's Store Repair Counterclaim, which isn't at issue in this appeal. And to the extent Nanda purports to provide record citations demonstrating he "repeatedly" asserted during his closing argument "that the counterclaims should be denied because [Phillips] did not conform to the APA," such general assertions were simply too vague to squarely place before the district court the specific arguments he later advanced in his motion for new trial. Aplt. Br. 22.

14

Accordingly, because (1) the district court found that Nanda failed to timely advance these arguments and declined to consider them on that basis and (2) Nanda identifies no error in the district court's finding, we likewise decline to consider these arguments. *See F.D.I.C. v. Noel*, 177 F.3d 911, 915 (10th Cir. 1999) ("[W]hen a litigant fails to raise an issue below in a timely fashion and the court below does not address the merits of the issue, the litigant has not preserved the issue for appellate review.").

In his final challenge to the district court's order denying his motion for new trial on the Remediation Counterclaim, Nanda again asserts that Phillips failed to prove it complied with § 11.3, which states:

> ***Notices***. All notices that are required or permitted to be given to the parties under [the APA] shall be sufficient in all respects if given in writing and delivered in person, by overnight courier, or by certified mail, postage prepaid, return receipt requested, to the receiving party at the [designated address].

App. 132.

Nanda concedes that Phillips notified him by letter of both the relevant contamination and Phillips's intent to seek reimbursement for any remediation costs that it incurred as a result. But he insists that Phillips failed to present any evidence proving it delivered that letter "in person, by overnight courier, or by certified mail, postage prepaid, return receipt requested" to the address listed in the APA. App. 132.

Yet Nanda again fails to provide a precise record citation demonstrating that he raised this argument below and that the district court ruled on it. Likewise, he again fails to argue for plain error on appeal. Accordingly, we treat Nanda's § 11.3

15

argument as waived and decline to consider it. *See* 10th Cir. R. 28.2(C)(2); *Harolds Stores, Inc.*, 82 F.3d at 1540 n.3; *Richison*, 634 F.3d at 1131. And because Nanda fails to identify any other basis for concluding that the district court abused its discretion in denying his motion for new trial on the Remediation Counterclaim, we affirm that aspect of the district court's order.

## Conclusion

The jury's verdicts on the Receivables Counterclaim and the Remediation Counterclaim weren't "clearly, decidedly, or overwhelmingly against the weight of the evidence." *M.D. Mark, Inc.*, 565 F.3d at 762 (quoting *Anaeme*, 164 F.3d at 1284). Accordingly, the district court didn't abuse its discretion in denying Nanda's motion for new trial. We affirm.

                                      Entered for the Court

                                      Nancy L. Moritz
                                      Circuit Judge

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT
# OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker	Chris Wolpert
Clerk of Court	October 18, 2018	Chief Deputy Clerk

Mr. Harold R Bruno III
Robinson Waters & O'Dorisio
1099 18th Street, Suite 2600
Denver, CO 80202-0000

Mr. Laura J. Ellenberger
Wood Smith Henning & Berman
1805 Shea Drive, Suite 200
Highlands Ranch, CO 80129

RE:   17-1318, Nanda v. Phillips 66 Company
      Dist/Ag docket: 1:15-CV-02108-REB-STV

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 6 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

*Elisabeth A. Shumaker*

Elisabeth A. Shumaker
Clerk of the Court

cc: Jessica Smith
Craig Stewart
Claire Elizabeth Wells Hanson

EAS/na